UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

MICHAEL V. DOUGHTY,

                    Petitioner,                   Case number 02-10042-BC
                                                   Honorable David M. Lawson

v.

HENRY GRAYSON,

                    Respondent,

_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

The petitioner, Michael V. Doughty, presently incarcerated at the Parnall Correctional Facility in Jackson, Michigan, has filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254, alleging that he is incarcerated in violation of his constitutional rights.  Following a no contest plea in 1994, Doughty was convicted on two counts of first-degree criminal sexual conduct, Mich. Comp. Laws § 750.520b, and sentenced to two concurrent custody terms of ten to twenty years.  In his pleadings, the petitioner raises claims of denial of substantive and procedural due process based on his competency at the time of his plea and ineffective assistance of both trial and appellate counsel.  The respondent has filed an answer in opposition to the petition insisting that the petitioner's claims are either procedurally defaulted or lack merit.  The Court now concludes that the petitioner's claims lack merit and will therefore deny the petition.

I.

In the fall of 1994, petitioner Michael V. Doughty was arrested and accused of sexually assaulting his two minor granddaughters, ages six and eight years old.  A complaint was filed

-1-

charging the petitioner with six counts of first-degree criminal sexual conduct and two counts of
second-degree criminal sexual conduct, and the case was eventually bound over to the Macomb
County circuit court for trial.  An attorney appointed to represent the petitioner filed a notice of
insanity defense, which triggered the State's mental examination procedures for a criminal
responsibility evaluation.  *See* Mich. Comp. Laws § 768.20a(2).

In October of 1994, the petitioner was evaluated by Dr. George Watson of the state's Center
for Forensic Psychiatry for the purpose of determining criminal responsibility and evaluating his
diminished capacity and insanity defenses.  The examination was completed and Dr. Watson issued
his report on October 31, 1994.  Dr. Watson concluded that, in his opinion, the petitioner was
mentally ill at the time of the offense, but he was not legally insane because he could appreciate the
wrongfulness of his conduct and had the ability to conform his conduct to the requirements of the
law.  Likewise, Dr. Watson believed a diminished capacity defense was unsupportable because the
petitioner was able to form the specific intent to commit the offenses.  Dr. Watson was not consulted
and did not express an opinion on the petitioner's competence to stand trial at that time.

On November 16, 1994, the petitioner pleaded no contest before a Macomb County,
Michigan circuit judge to two counts of first-degree criminal sexual conduct in exchange for
dismissal of four additional counts of first-degree criminal sexual conduct and two counts of second-
degree criminal sexual conduct.  On December 27, 1994, the petitioner was sentenced to two
concurrent prison terms of ten to twenty years.  Sentencing Tr. at 10-11.  Defense counsel provided
the sentencing court with a copy of a psychological report prepared by Dr. Steven Miller
recommending a sentence program.  Sentencing Tr. at 3.  Counsel also referenced other
psychological evaluations including that of Dr. Watson of the forensic center.  *Id*. at 4-5.

-2-

The petitioner filed a claim of appeal on May 4, 1995.  In January of 1996, he apparently filed a motion to set aside the judgment and a motion to withdraw his plea.  *See* Macomb County trial court docket, case number 1993-003128-FC.  In his appellate brief, filed on August 29, 1996, the petitioner raised the following issues:

I.    This Honorable Court should remand this case to the trial court so to allow Defendant to move to withdraw his nolo contendre [sic] plea because Defendant was incompetent to plead due to the fact that he was taking Prozac at the time the plea was rendered.

II.   This Honorable Court should vacate Defendant's concurrent 10-20 year sentences imposed in the case at bar and remand for resentencing because the sentences imposed violate the principle of proportionality expressed in People v. Milbourn.

The Michigan Court of Appeals affirmed the petitioner's convictions and sentences.  *People v. Doughty*, 1997 WL 33353369 (Mich. Ct. App. Feb. 28, 1997).  The petitioner did not file an application for leave to appeal to the Michigan Supreme Court.

On February 26, 1998, the petitioner filed a motion for relief from judgment in the trial court arguing that the court should have held a hearing to determine whether he was competent to enter a plea, and that his trial and appellate counsel were ineffective for failing to raise these issues.  The trial court denied the motion on April 29, 1998.  The petitioner then filed an application for leave to appeal in the Michigan Court of Appeals raising the following issues:

I.    Whether, where examining psychiatrists' reports included substantial evidence of defendant's long-term, severe mental illness; where trial counsel presented and quoted from these reports at the sentence hearing; where the trial court convicted and sentenced Defendant without holding a competency hearing, its absence violated his federal and state due process rights and state statutory right not to have a court convict him, when aware [sic] of substantial evidence of his incompetence, without a competency hearing and decision.

-3-

II.     Whether, under the federal and state due process and right to counsel clauses, where trial counsel has the above reports, but presents and quotes from these reports only to mitigate defendant's sentence; where trial counsel fails to move for a competency hearing or to investigate, prepare, and present an insanity defense; where as a result of these failures, defendant pleads no contest to two charges, trial counsel's assistance is ineffective.

III.    Whether, under the federal and state due process and right to counsel clauses, where direct review appellate counsel has the trial record of the facts described in questions I and II above; where direct review appellate counsel fails to raise the absence of competency hearing or trial counsel's ineffective assistance as issues, direct review appellate counsel's assistance is ineffective.

The Michigan Court of Appeals denied leave to appeal for the most part, but remanded the case to the trial court to hold an evidentiary hearing *nunc pro tunc* on the petitioner's competency to stand trial as of the date of the no contest plea.  The court stated:

> The Court orders, pursuant to M.C.R. 7.205(D)(2), that this cause is REMANDED to the Macomb Circuit Court for a determination of defendant's competency to stand trial (and concomitantly to plead nolo contendere) nunc pro tunc; if defendant is found to have been incompetent at the time of his plea, his convictions shall be VACATED and the prosecution shall not further proceed unless the defendant is presently competent or his competence is restored in the future, but if defendant is determined to have been competent to stand trial at the time of his plea, no post-conviction relief is warranted.  Although the application is from an order denying defendant's motion for relief from judgment pursuant to M.C.R. 6.508(D), and is therefore a collateral attack on defendant's conviction, a defendant's incompetence to stand trial represents a jurisdictional defect cognizable in collateral proceedings. Given the two psychiatric reports in possession of defendant's trial counsel and brought to the attention of the trial court not later than sentencing, it was ineffective assistance of counsel not to seek a determination of defendant's competency to stand trial, and it was an abuse of discretion for the trial court not to sua sponte require such an evaluation and determination.

*People v. Michael Vincent Doughty*, Docket No. 211846 (Mich. Ct. App. Oct. 30, 1998) (internal citations omitted).

-4-

On March 7, 2000, an evidentiary hearing was held in the Macomb County circuit court. Dr. Elizabeth Jarratt of the Center for Forensic Psychiatry was the first expert to testify regarding the petitioner's competency at the time he entered his pleas. Dr. Jarratt had spoken with the petitioner on November 23, 1999, and had studied previous psychiatric evaluations written about the petitioner, including notes written by Dr. George Watson regarding his evaluation of the petitioner. She testified that she believed the petitioner was not competent to stand trial or enter a plea at the time his plea was taken. Dr. George Watson, the psychologist from the Center for Forensic Psychiatry who examined petitioner for criminal responsibility and diminished capacity on October 7, 1994, testified that he believed the petitioner was competent to stand trial and enter a plea at the time the plea was taken. After hearing this conflicting evidence, and questioning both witnesses, the trial judge found that the petitioner was competent to stand trial at the time his plea was taken, stating that "Dr. Watson's opinion [was] more persuasive." Evid. Hearing. Tr. at 63 (March 7, 2000).

> Dr. Jarratt was given an almost impossible job. And I find that Dr. Watson's opinion is more persuasive. Dr. Watson examined the defendant just a month and a half before the plea. His opinion then although not expressed then was that he was - - the defendant was competent to stand trial in October 1994 and that is still his opinion.
>
> Based upon the testimony today and the two reports that have been admitted into evidence I do find that the defendant was able to understand the nature and object of the proceedings against him and to assist in his defense in a rational manner by his ability to perform the task necessary for him to perform in the preparation of his defense and during the trial; and therefore, I find he was competent to stand trial on November 1994.

*Ibid.*

The petitioner then filed an application for leave to appeal to the Michigan Court of Appeals. The petitioner contended that the trial court erroneously determined *nunc pro tunc* that he was

-5-

competent at the time he entered his no contest plea. The petitioner argued that the *nunc pro tunc* competency hearing was not the proper relief for the trial error, and that the trial court's finding of competency was not sufficiently supported by the evidence. The Michigan Court of Appeals denied leave to appeal without an opinion. *People v. Doughty*, No. 233029 (Mich. Ct. App. June 4, 2001). The Michigan Supreme Court denied the petitioner's delayed application for leave to appeal raising the same claim on December 21, 2001. *People v. Doughty*, 465 Mich. 935, 638 N.W.2d 753 (2001) (table).

On February 15, 2002, the petitioner filed the instant habeas corpus petition in this Court raising the following claims:

> I. The petitioner's convictions should be set aside because the state resolved the competency question in a way that was "contrary to" or "an unreasonable application of" [United States] Supreme Court law.

> II. The State's failure to set aside the petitioner's pleas or appeal based on the constitutionally ineffective way his attorney handled the same was "contrary to" [United States] Supreme Court law.

The respondent has filed an answer in opposition to the petition and contends that the petitioner's claims lack merit or are procedurally defaulted.

## II.

Although the petitioner's plea was entered in 1994, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (Apr. 24, 1996), govern this case because the petitioner filed this habeas petition after the AEDPA's effective date. *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). That Act "circumscribe[d]" the standard of review federal courts must apply when considering applications for a writ of habeas corpus raising

constitutional claims, including claims of ineffective assistance of counsel. *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003).

> As amended, 28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:
>
> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429, 433 (6th Cir. 1998).   Mere error by the state court will not justify issuance of the writ; rather, the state court's application of federal law "must have been objectively unreasonable." *Wiggins*, 539 U.S. at 520-21 (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000); internal quotes omitted).   Additionally, this Court must presume the correctness of state court factual determinations.   28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct."); *see also West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996) (stating that "[t]he court gives complete deference to state court findings of historical fact unless they are clearly erroneous").

The Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams*, 529 U.S. at 405-06.

The Supreme Court has held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause of § 2254(d)(1) "when a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409, 410-11. *See also Harbison v. Bell*, 408 F.3d 823, 828-29 (6th Cir. 2005); *McAdoo v. Elo*, 365 F.3d 487, 493 (6th Cir. 2004); *Rockwell v. Yukins*, 341 F.3d 507, 512 (6th Cir. 2003) (en banc); *Lewis v. Wilkinson*, 307 F.3d 413, 418 (6th Cir. 2002).

The petitioner raises two main grounds for relief regarding his competency at the time of his plea: first, the trial court's determination that the petitioner was competent to enter a plea was not sufficiently supported by the evidence; and second, the remand for a *nunc pro tunc* competency

-8-

hearing was not the proper relief for such an error. The petitioner also argues that his trial and appellate counsel were ineffective for failing to advise him properly on the sentence he would receive if he entered a plea, failed to intercede when the petitioner told the court that he was not taking medication, or failed to raise these issues on appeal.

A.

The Court cannot find that the trial court's *nunc pro tunc* ruling that the petitioner was competent at the time he entered his no contest plea was contrary to, or an unreasonable application of, United States Supreme Court law. Although the state procedures were not perfect, the errors initially committed were addressed in post-conviction proceedings so that the petitioner had a full and meaningful review of the competency issues presented by the record.

"[T]hat the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial" is not debatable. *Medina v. California*, 505 U.S. 437, 439 (1992) (citing *Drope v. Missouri*, 420 U.S. 162 (1975) and *Pate v. Robinson*, 383 U.S. 375 (1966)). As the Supreme Court has explained, competency to stand trial involves "the capacity [of a defendant] to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense." *Drope*, 420 U.S. at 171. A defendant is competent to stand trial if "he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and [if] he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960).

The concept of competency to stand trial is fundamental to our system, "for upon it depends the main part of those rights deemed essential to a fair trial, including the right to effective assistance of counsel, the rights to summon, to confront, and to cross-examine witnesses, and the right to testify

-9-

on one's own behalf or to remain silent without penalty for doing so." *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (quoting *Drope*, 420 U.S. at 171-72). "[A]n erroneous determination of competence threatens a 'fundamental component of our criminal justice system' – the basic fairness of the trial itself." *Id.* at 364 (quoting *United States v. Cronic*, 466 U.S. 648, 653 (1984)).

To safeguard the process, the Supreme Court has established a separate right to a competency hearing. *See Drope*, 420 U.S. at 172. Under the Due Process Clause, a trial court must hold a competency hearing whenever the evidence before it raises a "sufficient doubt" about the accused's mental competency to stand trial. *Id.* at 180; *Branscomb v. Norris*, 47 F.3d 258, 261 (8th Cir. 1995). The Supreme Court has also cautioned that "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial." *Drope,* 420 U.S. at 181.

The Supreme Court has not established a standard with respect to the quantum of evidence necessary to create "sufficient doubt." However, it has instructed the trial court to consider the following factors: (1) evidence of irrational behavior by the accused, (2) the accused's demeanor at trial, and (3) any prior medical opinion as to the mental competency of the accused to stand trial. *Id* at 180; *Branscomb*, 47 F.3d at 261. Additionally, the trial court may consider an express doubt by the accused's attorney, although such doubt alone generally is not sufficient to trigger a hearing. *Branscomb*, 47 F.3d at 261. The Sixth Circuit has held that where the trial judge "should have experienced doubt with respect to competency to stand trial," there is sufficient grounds to require a competency hearing. *Mackey v. Dutton*, 217 F.3d 399, 414 (6th Cir. 2000) (internal quotations omitted).

-10-

The record plainly establishes that the state trial judge should have held a competency hearing before accepting the petitioner's no contest plea, and the state court of appeals agreed. However, that court fashioned a remedy resulting in a full hearing, albeit after the fact, and a determination that the defendant was competent.  That conclusion required the state court to determine the historical facts  and apply the correct legal standard.  The petitioner challenges that determination, implying that it is a mixed question of fact and law.  The characterization of that determination as a mixed question affects the standard of review this Court must apply.  *See Thompson v. Keohane,* 516 U.S. 99, 110 (1995) (holding that the presumption of correctness stated in the former version of 28 U.S.C. § 2254(d) applied only to "basic, primary, or historical facts: facts in the sense of a recital of external events and the credibility of their narrators;" and that "[s]o-called mixed questions of fact and law, which require the application of a legal standard to the historical-fact determinations . . . are not facts in this sense") (internal quotes and citations omitted). However, when the state court applies the correct legal standard, the Supreme Court has treated the question of competency to stand trial as a fact question entitled to the presumption of correctness. *Maggio v. Fulford*, 462 U.S. 111, 117 (1983).   The Sixth Circuit settled the question for district courts in this circuit in *Mackey v. Dutton*.  *See* 217 F.3d at 412 (holding that "pursuant to recent Supreme Court precedent, the competency determination should be treated as a question of fact for purposes of § 2254(d)").  As a result, the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

After reviewing the evidence in the record, the Court is convinced that the petitioner cannot meet that burden.  At the state hearing after remand from the court of appeals, two expert witnesses testified as to the petitioner's competence as of the time he entered his no contest plea, and various

medical-psychological-psychiatric records were received in evidence. Both experts were aware of the correct legal test for competence (whether the petitioner understood the nature and object of the proceedings against him and had the ability to consult with his attorney and assist in his defense; *see Dusky*, 362 U.S. at 402). They also both agreed that the petitioner was mentally ill at the time he committed the crimes and when he entered a plea. However, the experts disagreed as to the petitioner's competence to enter the plea.

Dr. George Watson, who examined the petitioner for criminal responsibility and diminished capacity in October 1994, testified that he believed the petitioner was competent when he entered his plea. Dr. Watson said that although he had examined the petitioner for criminal responsibility and diminished capacity, he had asked many of the same questions he would have asked if he had been examining him for competence. Dr. Watson summarized the observations he made that were relevant to the petitioner's competence and stated that he had formed a contemporaneous opinion that the petitioner was competent to stand trial.

Dr. Elizabeth Jarratt testified that on the basis of her review of the records of the petitioner's mental health, consultation with Dr. Watson regarding his 1994 evaluation of the petitioner, and an examination of the petitioner she conducted on November 23, 1999, she believed the petitioner was incompetent to stand trial when he entered his no contest plea. At the hearing, she stated:

> It was my opinion that he probably understood the nature and object of the proceedings against him and that his symptoms of mental illness did not interfere with that. However, he was noted by Dr. George Watson to have had some trouble attending – maintaining attention and concentration. He was experiencing apparently a hallucination during the interview with Dr. Watson and he also reported that he was experiencing this [sic] which apparently was giving him advice and commenting on things and was therefore – had some primacy in his thinking, and he had paranoid delusions which led him to believe that people were out to get him in a sort of general way. Of stating it particularly some of these delusions had to do

-12-

with neighbors down the street that he thought could tell what he was thinking and he would have to go in the house to get away from their capacity to tap into his mind.

My opinion was that the – and confusion also at the time.  My opinion was that the confusion, the difficulty attending to what was going on, to concentrating on information – he also had little insight into the fact he was mentally ill.  His impaired kind of thinking that resulted from mental illness – in general, a psychotic disorder, reduces cognitive capacity.  So somebody might start out with an IQ in the average range and just – and just gradually the IQ points drop with a mental illness.  All of these factors appeared to interfere with his ability to really understand and work with his attorney, to understand what his attorney was talking about, to be able to communicate necessary information to his attorney and make a reasonable decision regarding the consequences of pleading no contest.

Evid. Hearing Tr. at 13-14.  Dr. Jarratt acknowledged that Dr. Watson recently had informed her of the questions he asked the petitioner that might bear on the issue of competency, and she said that she "did not hear anything that would change [her] mind."  *Id*. at 15.  She later clarified that the factors that pointed to a finding of incompetence were that the petitioner "had trouble maintaining attention and concentration.  He was distracted by a voice inside his head.  He was not thinking very clearly.  He appeared to be confused."  *Id.* at 20.

The trial judge asked Dr. Watson to explain the basis for his opinion that the petitioner was competent at the time he entered his no contest plea.  Dr. Watson replied:

Well, specifically, first of all, Mr. Doughty was quite clear about his account of what was alleged to him [sic].  He at a number of points, all of which I quote in my report, was very, very specific about what his account of his actions was in connection with the allegations against him.  He had no difficulty understanding that he was a criminal defendant.  He had no difficulty understanding what he was charged with.  And as I am implying he appeared to be prepared to vigorously contest those allegations.  What's further insofar as again my opinion, his mental illness and what he was alleged with [sic] he was not claiming any connection between what was alleged to him and his mental illness.  So to make a contrast, it was not the typical thing well, the voices told me to do such and such, he explicitly denied that there was any connection between any of the things that he might have been charged with.  He gave a detailed contemporaneous account of the things that he thought went to support his story.  He talked about the victims.  He talked about motivation that they might have not to tell the truth and about him—other circumstances which again

-13-

would be seen as supporting his contention and not theirs. So again, on a totally informal level he appeared to be behaving as a defendant who is operating in his interests. He was not incriminating himself. And he was certainly bringing up things that were in his favor. And so on that basis I felt that I could justify my conclusions by in effect saying that well yes, he's got these symptoms but certainly [sic] does not appear to be preventing him from grasping his circumstances and acting accordingly insofar as protecting himself. And it was also notable to me that he did not give an account at the time of interrogation by the police, that he specifically invoked his right [to silence] at that time. So all of these things from my perspective went to capacity and certainly were not the sorts of things that you would expect to go along with someone being psychotic and out of it and not sort of grasping the seriousness of their situation. These are all contrary to that line of reasoning.

Evid. Hearing Tr. at 46-48.

Dr. Watson also explained:

Dr. Jarrat has testified here this afternoon that again at some point after I believe she had rendered her opinion I approached her to say well gee, as a matter of fact, I did indeed ask him [the petitioner] questions that would – I would more typically ask during a competency to stand trial evaluation, and in effect was trying to explain to her well yes, you know, these were not available to you because again, they were in shorthand and insofar as the dictation of additional notes for the chart, basically there was no place for them. So that what I would say is that I did ask – I did ask specific questions not unlike the exact sort of questions that I would ask during a competency evaluation or doing a combined [competency and criminal responsibility] evaluation if you will. It's just that I satisfied myself that he did appear to be competent and therefore consequently I had no outlet for that information. No one was asking me to render an opinion as to his competency. It certainly did not go into a court report for reasons that I've explained here, neither did it go into the chart, because I did dictate an addendum to my report as I have said that had certain information about Mr. Doughty's history, that also had certain information about my estimation of him as a historian but I did not include any of that particular information in that particular note.

*Id.* at 41-42.

Dr. Watson also testified that the petitioner's mental illness, residual psychotic symptoms, and primarily auditory hallucinations caused him some difficulty concentrating and that such afflictions could have impaired his ability to assist counsel during his trial if those symptoms were

-14-

present at that time.  *Id.* at 53-54.  Dr. Watson added that he interviewed the petitioner for two-and-one-half hours and the petitioner was rational, communicative, and cooperative during that interview, which generated ten pages of shorthand notes.  *Id.* at 56.

The petitioner argued that because Dr. Watson testified that the petitioner suffered some residual psychotic symptoms that could have impaired his ability to concentrate, consult with and assist his attorney, and present his defense at trial if those symptoms were present, it was unreasonable for the trial judge to conclude that he was competent.  However, Dr. Watson explained that those symptoms did not emerge through the course of proceedings, and there was no evidence from the petitioner or his attorney that any difficulty in communication of decision-making was encountered.

A criminal defendant is legally competent if he is able to consult rationally with his attorney and have a rational and factual understanding of the proceedings against him.  *Dusky,* 362 U.S. at 402.  The defendant need not be able to function in an a completely unimpaired manner or be able to interact with his lawyer as an equally competent co-counsel.  That the petitioner's mental illness caused him some diminished ability to concentrate in general does not mean that he was not competent.

As the Supreme Court explained in *Drope*, "[e]ven when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."  *Drope,* 420 U.S. at 181.  The fact that the petitioner had a condition with the *potential* to flare up or worsen and render him incompetent during a trial or plea proceeding does not establish that he was incompetent absent such an episode.  But the petitioner has not alleged any facts that would suggest

-15-

his symptoms worsened during the plea proceedings, and the mere possibility of a worsening does not support a conclusion that the trial judge ignored the evidence or made an unreasonable determination of the facts in finding the petitioner competent.

The petitioner further insists that the state trial court's *nunc pro tunc* ruling that he was competent is an unreasonable determination of the facts. Under Michigan law, the determination of a defendant's competence is committed to the trial court's discretion. *People v. Garfield*, 166 Mich. App. 66, 73, 420 N.W.2d 124 (1988); *People v. Ritsema*, 105 Mich. App. 602, 606, 307 N.W.2d 380 (1981), *lv. den*. 413 Mich. 934 (1982). "The Supreme Court recently held that the due process clause permits a state to require a defendant to bear the burden of proving his or her own incompetence." *Rhode v. Olk-Long*, 84 F.3d 284, 288 (8th Cir. 1996) (citing *Medina v. California*, 505 U.S. 437, 450-51 (1992)). In this case, the state trial judge heard the testimony of two qualified expert witnesses and reached a conclusion that was fully supported by one of them. For this Court to conclude otherwise, it must "substitute[] its own judgment as to the credibility of witnesses for that of the [Michigan] courts – a prerogative which 28 U.S.C. § 2254 does not allow it." *Maggio*, 462 U.S. at 113.

## B.

The petitioner also argues that a *nunc pro tunc* competency hearing held after the fact violates established Supreme Court precedent. There is some support for that argument in *Lagway v. Dallman*, 806 F. Supp. 1322, 1339 (N.D. Ohio 1992), where the court, when confronted eight years after the fact with the state trial judge's inadequate treatment of a competency issue, rejected the option of conducting a *nunc pro tunc* evidentiary hearing himself and concluded that "[t]he only viable option available to the court is to grant petitioner's writ and vacate the conviction and

-16-

sentence." In that case, however, the state trial judge determined competency after an hour-long discussion with the defendant despite a contrary report from a qualified psychologist, and he prevented the defendant from offering evidence at the state hearing. The Court agrees with the observation in *Lagway* that *if* the state procedures are found to be inadequate, a *nunc pro tunc* hearing in this Court would do little to provide due process.

The question, however, is whether the State's *post hoc* determination of competency was constitutionally sufficient. The Sixth Circuit's interpretation of *Dusky, Pate,* and *Drope* allows retrospective competency determinations where, as here, a meaningful hearing is possible. Although the Court has held in *Drope* that "the inherent difficulties of [ ] *nunc pro tunc* determination" required that the petitioners' convictions be overruled, *Drope*, 420 U.S. at 183, the Sixth Circuit has clarified that a retrospective hearing and determination of the prisoner's competence may satisfy the due process requirement. *Conner v. Wingo*, 429 F.2d 630, 640 (6th Cir. 1970) (noting, however, that "in some circumstances the only appropriate remedy may be issuance of the writ and retrial after a current hearing on competence"). A retrospective hearing and determination will provide due process where sufficient "evidence contemporaneous to th[e] trial" exists to make a reasonable determination, because "[o]bviously, psychiatric evidence based on examination six years after trial has very limited probative value as to competence at trial." *Id.* at 639-40.

Similarly, the Eighth Circuit has held:

> The conviction of a legally incompetent person violates due process. *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 838, 15 L. Ed. 2d 815 (1966). While post-conviction determinations of competency are generally disfavored, *id.* at 387, 86 S. Ct. at 843, we have held that a post-conviction competency hearing is proper so long as 'a meaningful hearing' remains possible.

*Rhode v. Olk-Long*, 84 F.3d 284, 287 (8th Cir. 1996).  In *Rhode*, testimony was available from several medical experts who had examined the petitioner "either during the trial or not long after her conviction."  *Id.* at 287-88.  The court found that "the contemporary nature of these doctors' examinations of appellant was sufficient to make an adequate [post-conviction] hearing possible." *Id.* at 288 (internal quotations omitted).

In this case, Dr. Watson had evaluated the petitioner shortly before his plea-taking procedure. Although Dr. Watson testified that he had not conducted a formal competency evaluation, he did testify that his evaluation included many of the same questions and elicited the same information that he would have obtained during a formal competency assessment.  Dr. Watson testified in detail about that information.  The petitioner's medical and mental health records from the time shortly before his plea proceeding were also available.  Under these circumstances, it appears that a meaningful, retrospective competency determination was possible, and the petitioner received such a determination at the Macomb County circuit court hearing on March 7, 2000.

The petitioner contends that, because Dr. Watson testified that he had no independent recollection of having evaluated the petitioner apart from **a** review of the petitioner's chart and his (Dr. Watson's) notes, the trial court's reliance on Dr. Watson's testimony was unreasonable.  The Court disagrees.

Even at trial, a written "report [may be] properly used by the witness to refresh his recollection if the appropriate foundation [i]s established."  *Moncrief v. City of Detroit*, 398 Mich. 181, 190, 247 N.W.2d 783, 787-88 (1976).  There is no suggestion in the record that Dr. Watson's memory was not properly refreshed by reference to his report and notes prior to the evidentiary hearing.  Further, Dr. Watson's testimony shows that he had re-familiarized himself with his 1994

-18-

evaluation of the petitioner and he testified in detail about his observations as well as his conclusions. He did not read his report into the record or state in a conclusory fashion that he believed that whatever he had written in 1994 was true. The fact that Dr. Watson admitted that he had no independent recollection of having evaluated the petitioner absent his notes does not render his refreshed testimony less probative or make the trial court's reliance upon it unreasonable.

## C.

The petitioner next claims that his trial counsel was ineffective for failing to request a competency determination before the petitioner entered his no contest plea and for advising the petitioner to agree to an illusory plea bargain, which offered the petitioner no actual benefit in exchange for his plea. The petitioner also contends that his appellate attorney was ineffective for failing to present these claims. The respondent believes that these claims are procedurally defaulted because they were not fairly presented in his motion for relief from judgment. Because these claims lack merit, a detailed discussion of the procedural default doctrine is unnecessary. *See Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

To show a violation of the right to effective assistance of counsel, a petitioner must establish both prongs of the *Strickland* test: first, that counsel's performance was deficient "in that it fell below an objective standard of reasonableness," *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 688 (1984)); and second, that the petitioner was prejudiced as a result. This second aspect is satisfied by a showing that counsel's deficient performance may have altered the results of the trial. *Ibid.*

An attorney's performance is deficient if "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*,

-19-

466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential." *Id*. at 689. An attorney's deficient performance is prejudicial if "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. Also, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694. Unless the petitioner demonstrates both deficient performance and prejudice, "it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687. Stated another way, "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

The *Strickland* framework applies to claims of ineffective assistance of counsel arising from a guilty plea. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). The first prong of the test remains the same. *Ibid.* However, the prejudice requirement focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. *Id*. at 59. In other words, the defendant must show **"**that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty (or in this case, no contest) and would have insisted on going to trial.**"** *Ibid.*

In this case, the petitioner believes his trial attorney was ineffective because he gave the petitioner incorrect information regarding the terms of the plea agreement: that he would serve only "a couple of years in prison" and that he based his acceptance of the plea agreement on that belief. However, at the petitioner's plea hearing, the trial judge informed the petitioner of the nature of the crime and told him the maximum sentence allowed by law. He also asked the petitioner if "anyone

-20-

promised you, Ms. Fresard [the prosecutor], Mr. Alexander [defense counsel], or the Court, a specific sentence for your plea of No Contest?"  Plea Tr. at 5.  Under oath, the petitioner replied "No."  *Ibid.*

Because the petitioner was given the correct sentencing information by the trial court at the time of the plea, and the petitioner expressly denied the existence of other representations or promises, his plea was not involuntary.  *See United States v. Todaro*, 982 F.2d 1025, 1029-30 (6th Cir. 1993).  Moreover, the petitioner is not entitled to habeas relief simply on the basis that his subjective understanding of the plea bargain may have been erroneous.  *See Nichols v. Perini*, 818 F.2d 554, 558-59 (6th Cir. 1987).

At the time that he accepted the plea agreement, the petitioner testified under oath that he had an accurate understanding of the agreement.  Plea Tr. at 5.  He therefore cannot establish that his attorney was ineffective in failing to correctly inform him regarding the terms of the plea agreement.  Further, because this claim of ineffective assistance of trial counsel lacks merit, the petitioner cannot establish that appellate counsel was ineffective for failing to present this claim in his appeal of right.

The petitioner next contends that trial counsel was ineffective for failing to seek a competency determination prior to the petitioner entering his no contest plea.  The Michigan Court of Appeals found that trial counsel's performance was deficient for failing to seek a contemporaneous competency hearing.  This Court will not address that issue, however, because the petitioner is unable to establish that he suffered prejudice as a result of his attorney's performance, which is fatal to his ineffective assistance claim.  *See Strickland*, 466 U.S. at 697 (stating that "a

-21-

court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies").

The prejudice prong of *Strickland*'s two-part test requires the petitioner to show that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the proceedings would have been different. *Strickland*, 466 U.S. at 688. Because the Court has determined that the state post-remand proceedings were adequate to address the question of the petitioner's pretrial competence, the petitioner cannot show that he suffered a loss of constitutional rights as a result of the failure of his attorneys – both trial and appellate – to pursue a request for a competency hearing before trial. The trial court made a constitutionally sufficient determination of competency retrospectively. The finding was a reasonable determination of the facts before the trial court and fairly supported by the record. There is no reasonable probability that the outcome of the proceedings would have been different even if trial counsel had sought a contemporaneous competency determination in 1994 before the petitioner entered his no contest plea. The petitioner likely would have been found competent to stand trial at that time. The petitioner therefore cannot show that trial counsel was constitutionally deficient in this respect, and his claim against his attorney on appeal on that basis must also fail.

The petitioner also suggests that his plea bargain was illusory because it did not secure for him a sentence below the guideline-recommended sentence or dismissal of all of his first-degree criminal sexual conduct charges. In other words, the petitioner believes he would have received the same result had he gone to trial and lost.

The trial judge sentenced the petitioner to two concurrent prison terms of ten to twenty years. It appears that the sentence guideline range for the crimes was from five to ten years for the

minimum sentence, and the court chose to sentence the petitioner at the high end of the guideline range. Sentencing Tr. at 10-11. However, Michigan's sentencing guidelines for minimum sentences are advisory, and he could have received a sentence of up to life imprisonment if he was convicted of all counts. *See* Mich. Comp. Laws § 750.520c. Four counts of first-degree criminal sexual conduct and two counts of second-degree criminal sexual conduct were dismissed pursuant to the plea bargain. The petitioner's ineffective assistance claim on this ground therefore lacks merit.

III.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts. Therefore, the petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated: October 31, 2005

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on October 31, 2005.

s/Tracy A. Jacobs
TRACY A. JACOBS

-23-